IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,             )
                                      )        2:10-cr-0119-GEB
               Plaintiff,             )
                                      )
          v.                          )        ORDER
                                      )
REGINALD BOWSER,                      )
                                      )
               Defendant.             )
_____       )

Defendant filed a "Motion to Suppress Evidence" on April 4, 2011 and a "Motion for Hearing Pursuant to Franks v. Delaware" on June 23, 2011. (ECF Nos. 33, 46.) The motions were argued on September 2, 2011. For the reasons stated below, the motions are DENIED.

## I. Motion to Suppress

Defendant argues in his suppression motion:

> Evidence against [him] in this case was seized after a search of a vehicle incident to his arrest that occurred on January 21, 2010 in San Leandro, California, and in a search of his girlfriend's house at 378 Collins Court in Mountain House, California that same day. The arrest was made pursuant to an outstanding arrest warrant issued on January 15, 2010 purporting to establish "probable cause" to arrest [Defendant] for homicide. By the time [Defendant] was arrested six days later, however, any probable cause to arrest [Defendant] for homicide had dissipated – and Officer Bergeron, present at the time of [Defendant's] arrest and directing his arrest, *knew such probable cause had dissipated*. . . . In addition, Defendant seeks the suppression of the evidence found as the result of the search of 378 Collins Court, discovered pursuant to the execution of search warrant issued

1

1    without probable cause. It is evident from the
2    search warrant affidavit that no probable cause
     existed linking any contraband or other evidence
3    related to a homicide with 378 Collins Court.

4  (Mot. to Suppress 2:17-24, 3:10-13.) The government opposes the motion.

5                    **A. Search Incident to Arrest**

6        Defendant moves for suppression of evidence seized after a

7  search of the vehicle he was in when he was arrested pursuant to a state

8  arrest warrant; Defendant argues since the probable cause to arrest him

9  had dissipated his arrest was unlawful and the evidence seized in the

10 search incident to his arrest should be suppressed. Defendant contends:

11 "the Oakland Police Department . . . was *aware of new facts* that

12 dissipated any good faith belief that probable cause still existed to

13 arrest [Defendant], despite the fact that an arrest warrant had issued

14 [; and t]herefore, [his] arrest was in fact not predicated on probable

15 cause." (Mot. to Suppress 3:2-5.) The Government counters that the

16 probable cause supporting the arrest warrant did not dissipate merely

17 because the District Attorney in Alameda County decided not to file

18 murder charges against Defendant's alleged co-conspirator involved with

19 the homocide. (Opp'n to Mot. to Suppress 2:13-15.)

20       On January 15, 2010, Homicide Sergeant James Gantt of the

21 Oakland Police Department authored affidavits in support of probable

22 cause to arrest Defendant and Marcus Jones (Defendant's alleged co-

23 conspirator) in connection with the November 3, 2009 homicide of Earnest

24 Prescott. Gantt's affidavits in support of a warrant to arrest each man

25 are nearly identical and relay the same information. Based on Gantt's

26 affidavits, arrest warrants were issued for Defendant and Jones on

27 January 15, 2010.

28

1          On January 16, 2010, Jones was arrested; he was charged with
2    drug charges and evasion on January 21, 2010; however, he was not
3    charged in connection with Prescott's murder. On January 21, 2010,
4    Defendant was arrested pursuant to the arrest warrant and the vehicle he
5    was in searched incident to his arrest. Defendant seeks suppression of
6    the evidence discovered during the search of the vehicle he was in
7    before he was arrested.

8          Defendant argues that when the district attorney's office
9    chose not to charge Jones with Prescott's murder, the district
10   attorney's office "reject[ed] . . . the case" against Jones and this
11   rejection dissipated the probable cause that supported Defendant's
12   arrest warrant. (Mot. 5:7, 7:14-26.) Defendant further argues that the
13   officer directing Defendant's arrest knew of this new information, "yet
14   [he] did nothing to advise either the officers [attempting to locate
15   Defendant] or the magistrate that probable cause no longer existed[.]"
16   Id. 5:5-7. Defendant argues that "[h]ad the magistrate been presented
17   this new information, an arrest warrant for [Defendant] could not have
18   been issued." Id. 7:27-28.

19         The Government counters that "[t]he decision by the district
20   attorney not to bring charges at this time does not in any way invitiate
21   the probable cause that existed for the arrest of Marcus Jones or the
22   defendant" since "the District Attorney for the County of Alameda has
23   the sole discretion to decide what charges to bring, against whom to
24   bring those charges, and when to bring those charges in the murder of
25   Earnest Prescott." (Opp'n to Mot. to Suppress 4:23-25, 13-16.)

26         "It is true that when officers learn of new *facts* that negate
27   probable cause, they may not rely on an earlier-issued warrant but
28   instead must return to the magistrate . . . ." United States v. Spencer,

1   530 F.3d 1003, 1008 (D.C. Cir. 2008). However, the decision by the

2   district attorney's office to charge Jones with drug charges and evasion

3   was an independent decision by the district attorney's office to

4   exercise its "sole discretion to determine whom to charge, what charges

5   to file and pursue, and what punishment to seek." Dix v. Superior Court,

6   53 Cal.3d 442, 451 (1991). Defendant offers only assumptions and

7   argument regarding what motivated the district attorney's decision not

8   to charge Jones in connection with Prescott's death on January 21, 2010.

9   This is not a new fact that negates probable cause to arrest Defendant.

10  See Spencer, 530 F.3d at 1008 (stating "a legal conclusion reached by a

11  different judge in a different matter" is not a new fact which negates

12  probable cause). Therefore, Defendant's motion to suppress based on the

13  argument that the arrest warrant was invalid is DENIED.

14                      **B. Search of Residence**

15         Defendant also "seeks the suppression of the evidence found as

16  the result of the search of 378 Collins Court, discovered pursuant to

17  the execution of [a state] search warrant issued without probable

18  cause." (Mot. to Suppress 3:10-12.) Defendant argues "[i]t is evident

19  from the search warrant affidavit that no probable cause existed linking

20  any contraband or other evidence related to a homicide to 378 Collins

21  Court." Id. 3:12-13.

22         The Government counters that the affidavit supporting probable

23  cause for the search warrant for 378 Collins Court contains sufficient

24  probable cause establishing a reasonable nexus between the items to be

25  seized and the place to be searched. (Opp'n to Mot. to Suppress 7:8-10.)

26  The Government further argues that assuming *arguendo* that probable cause

27  was lacking for the issuance of the search warrant, the officer had an

28

1  objective good faith belief in the validity of the search warrant. Id.

2  11:3-5.

3        Gantt authored an affidavit in support of probable cause to

4  search 378 Collins Court for evidence related to Prescott's murder,

5  including the murder weapon and documents containing accounts of the

6  crime. Defendant argues there was insufficient evidence linking him to

7  378 Collins Court in Gantt's affidavit to support the issuance of the

8  search warrant for 378 Collins Court. Gantt avers as follows in his

9  affidavit:

10             On January 21, 2010 at 7:50 AM I received
              information from OPD Officers . . . that they
11            observed [Defendant] leave from the driveway of 378
              Collins Court in Mountain House California.
12            [Defendant] was observed wearing a gray colored two
              piece jogging style suit.
13
              [Defendant] was subsequently arrested for his
14            outstanding murder warrant . . . .
              Based on phone records your affiant has obtained on
15            [Defendant] it appears in the evening his cellular
              phone consistently hit off phone towers in the City
16            of Mountain House. DMV records and Alameda Corpus
              records list addresses for [Defendant] at 411
17            Fairmont Ave # 104 Oakland Ca. and 5049 Shalimar
              Circle Fremont Ca. 94555. Based on the
18            investigation it appears [Defendant] is not staying
              at the aforementioned addresses.
19

20  (Mot. to Suppress Ex. B.)

21        "Searches pursuant to a warrant will rarely require any deep

22  inquiry into reasonableness," for "a warrant issued by a magistrate

23  normally suffices to establish" that a law enforcement officer has

24  "acted in good faith in conducting the search." U.S. v. Leon, 468 U.S.

25  897, 922 (1984) (citation and internal quotation marks omitted).

26  "Nevertheless, the officer's reliance on the magistrate's probable-cause

27  determination and on the technical sufficiency of the warrant he issues

28  must be objectively reasonable, and it is clear that in some

1  circumstances the officer will have no reasonable grounds for believing

2  that the warrant was properly issued." Id. at 922-923. Suppression of

3  evidence is appropriate "in cases where the issuing magistrate wholly

4  abandoned his judicial role[.]" Id. at 923. "[I]n such circumstances, no

5  reasonably well trained officer should rely on the warrant. Nor would an

6  officer manifest objective good faith in relying on a warrant based on

7  an affidavit 'so lacking in indicia of probable cause as to render

8  official belief in its existence entirely unreasonable.'" Id. (citations

9  omitted).

10         Gantt's affidavit set forth details of the investigation, the

11  place to be searched, Defendant's connection to that place, and the

12  items sought there.  Whether or not the magistrate's determination that

13  there was a reasonable likelihood that the items to be seized could be

14  found at 378 Collins Court was correct, Gantt had objective good faith

15  in relying on that warrant since his affidavit is not "so lacking in

16  indicia of probable cause as to render official belief in its existence

17  entirely unreasonable." Leon, 468 U.S. at 923.

18         Therefore, Defendant's motion to suppress the evidence

19  obtained after searching 378 Collins Court pursuant to the search

20  warrant is DENIED.

21                          **II. Motion for Hearing**

22         Defendant seeks a hearing under Franks v. Delaware, 438 U.S.

23  154 (1978), arguing Gantt misrepresented key witness statements in his

24  affidavits in support of the arrest warrant for Defendant and the search

25  warrant of 378 Collins Court. (Mot. for Hearing 3:12-14.) The Government

26  counters that Gantt's "affidavits do not contain any false statements

27  intentionally made, or any statement made with reckless disregard for

28

the truth that was material to a finding of probable cause." (Opp'n to

Mot. for Hearing 4:20-22, ECF No. 48.)

"[W]here the defendant makes a substantial preliminary showing

that a false statement knowingly and intentionally, or with reckless

disregard for the truth, was included by the affiant in the warrant

affidavit, and if the allegedly false statement is necessary to the

finding of probable cause, the Fourth Amendment requires that a hearing

be held at the defendant's request." Franks, 438 U.S. at 155-156.

> There is, of course, a presumption of validity with
> respect to the affidavit supporting the search
> warrant. To mandate an evidentiary hearing, the
> challenger's attack must be more than conclusory
> and must be supported by more than a mere desire to
> cross-examine. There must be allegations of
> deliberate falsehood or of reckless disregard for
> the truth, and those allegations must be
> accompanied by an offer of proof. They should point
> out specifically the portion of the warrant
> affidavit that is claimed to be false; and they
> should be accompanied by a statement of supporting
> reasons. Affidavits or sworn or otherwise reliable
> statements of witnesses should be furnished, or
> their absence satisfactorily explained.

Id. at 171.

Gantt's affidavits in support of an arrest warrant for

Defendant and a search warrant for 378 Collins Court set forth the same

information regarding the investigation of Prescott's murder. The

following averments in Gantt's affidavits form the basis of Defendant's

arguments:

> Sergeant Galindo and I made contact with Trina
> Bayne inside her residence. Also present were
> Bayne's friend[] . . . Shawonia Wysinger. Bayne
> told us that the victim had come over to visit
> during the evening. Bayne stated that right before
> the shooting [Defendant] . . . called her home
> phone and she did not answer it. Wysinger called
> [Defendant] back seconds later on his cellular
> telephone . . . and he told her to tell Prescott to

come outside. Bayne stated that she walked Prescott
out of her apartment . . . .
. . .
Sergeant Galindo and I conducted interviews with
Trina Bayne and Shawonia Wysinger. . . . Bayne
stated that [Defendant] uses her apartment to
package and sell drugs and he and Prescott were
partners in the "drug game".
. . .
After speaking with Wysinger and Bayne, they both
confirmed that [Defendant] called Bayne's house on
the night of the murder and told them to tell
Prescott to come outside. Wysinger stated that she
was on her cellular phone with [Defendant] when
Prescott walked out of the residence. [Defendant]
asked Wysinger, "Where's Ern at["] (aka Prescott)
and she told him "Ern" was outside. [Defendant]
changed his story and said "no stupid I didn't tell
you that[.]" Wysinger said then she heard several
gunshot[s] coming from outside of the residence,
[and] she hung up the phone with [Defendant].
. . .
Your affiant believes [Defendant] on the night of
the murder called the victim['s] friends and asked
them to have Prescott come from inside their
apartment . . . so he could be shot.

(Mot. to Suppress Ex. B.)

Defendant argues that Gantt included incorrect statements from
witnesses Bayne and Wysinger in his affidavits. (Mot. for Hearing 5:15-
16.) Defendant submits a statement from Bayne in which she identifies
errors in Gantt's affidavits; Bayne states: "I did not say that Prescott
and [Defendant] were partners in the drug game. I said they were best
friends and that they ran together, and did everything together." Id.
Ex. A. Defendant argues "[m]ere partners in the drug game versus best
friends that did everything is a very different story[,] . . . [t]he
former give[s] one a motive for murder[,] the latter cuts against it."
Id. 5:21-23.

In response, the Government reproduces portions of the
transcript of Gantt's interview with Bayne and also the audio recording
of that portion of the interview. (Opp'n to Mot. for Hearing 7:1-22,

8

1  Attachment 1; Errata to Opp'n 2:8-17, ECF No. 52.) The transcript and

2  recording support Gantt's statements in his affidavits.

3         Defendant also submits a declaration from a private

4  investigator who spoke with Wysinger and declares: Wysinger said

5  Defendant "did not ask her to send Ern (Ernest Prescott) outside as the

6  search warrant affidavit indicates." (Mot. for Hearing Ex. B.) The

7  private investigator declares that when Wysinger called Defendant back

8  he "asked her where Ern was. She told [Defendant] that Ern was already

9  outside. She asked [Defendant] if he wanted her to go outside and get

10 Ern. [Defendant] replied, 'No, don't be stupid.' They hung up the phone

11 and seconds later she heard shots outside." Id. Defendant argues "Gantt

12 twisted the facts in the affidavit  . . . [and] presented a neat theory

13 to the magistrate: 'that [Defendant] on the night of the murder called

14 the victim friends and asked them to have Prescott come from inside

15 their apartment . . . so he could be shot.'" Id. 5:28-6:2.

16        In response, the Government reproduces the portion of the

17 transcript of Gantt's interview with Wysinger and the audio recording of

18 the same. (Opp'n to Mot. for Hearing 9:14-17, Attachment 1; Errata to

19 Opp'n 2:8-17, ECF No. 52.) This evidence supports Gantt's affidavits.

20 Specifically, the transcript and recording support Gantt's averments in

21 his affidavits that Defendant told Wysinger to tell Prescott to go

22 outside.

23        The Government has demonstrated that Gantt's affidavits

24 accurately relayed the witnesses statements; the transcripts and

25 recordings of Gantt's interviews with the witnesses do not show any

26 material misrepresentations. Therefore, Defendant has failed to make a

27 "substantial preliminary showing that a false statement knowingly and

28 intentionally, or with reckless disregard for the truth, was included by

9

1  [Gantt] in the warrant affidavit[s .]" <u>Franks</u>, 438 U.S. at 155-156.

2  Therefore, Defendant's motion for <u>Franks</u> hearing is DENIED.

3          IT IS SO ORDERED.

4  Dated:  September 29, 2011

5

6  _____
   GARLAND E. BURRELL, JR.
7  United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28